UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| PHILIP FRITZ | CIVIL ACTION |
| VERSUS | |
| SATELLINK PAGING, LLC | NO.: 03-00619-BAJ-SCR |

RULING AND ORDER

## I.   INTRODUCTION

This lawsuit arises out of the sale of a business.  Plaintiff Philip Fritz ("Fritz"),
individually and in his capacity as a representative of Premier Paging, Inc., Premier
Paging of New Orleans, Inc., and the shareholders of Premier Paging, Inc., and Premier
Paging of New Orleans, Inc., filed this lawsuit against Defendant Satellink Paging, LLC
("Satellink") after Satellink defaulted on a $860,000.00 promissory note.  Fritz seeks a
judgment against Satellink and awarding it the principal balance owed, interest, and
attorney's fees.  (Docs. 1, 3.)  Satellink denies liability and argues that any debt owed
to Fritz is subordinate to Satellink's other debt holders.  Thus, it is under no obligation
to pay Fritz.  (Doc. 7.)

Both parties agreed to waive their right to trial by jury.  (Doc. 31.)  Accordingly,
a bench trial was held on September 13, 2013.  (Doc. 66.)  The parties also submitted
pre-trial and post-trial briefs.  (Docs. 53, 55, 65.)  The Court's credibility findings,
findings of fact and conclusions of law are set forth below, as required by Federal Rule

of Civil Procedure ("Rule") 52(a).

## II. JURISDICTION

It is uncontested that this Court has jurisdiction pursuant to 28 U.S.C. §§ 1332.

## III. FINDINGS OF FACT

The following findings of fact are uncontroverted or supported by the evidence in the record. Where a particular fact was controverted, the Court weighed the evidence and determined that the evidence presented by the party supporting that fact was more persuasive.

1. On April 1, 1998, in consideration for the purchase of assets from Fritz, Satellink executed an agreement entitled, "Subordinated Promissory Note" ("the Note") to and in favor of Fritz subject to the following terms:

- a promise to pay Eight Hundred Sixty Thousand Dollars ($860,000.00) together with interest at the rate of nine percent (9%) per year;

- a due date for the entire balance on April 1, 2002 with interest of ten percent (10%) for past due principal payments;

- a definition of an "Event of Default" to include the failure to pay principal or interest within five (5) business days of the due date thereof; and

- the agreement that the debt would automatically become due and payable upon the occurrence of an Event of Default, without the necessity of demand or notice.

(Doc. 1, pp. 4-6.)

2. As of July 1, 2000, the principal due on the Note was $790,943.75.

3. By operation of its terms, the Note placed Satellink in default upon failure to pay

any principal, interest or other amount due thereunder within five (5) business days of

the due date thereof:

> Each of the following events shall constitute an "Event of Default" under this Note: (i) failure of Maker to pay any principal, interest or other amount due hereunder within, five (5) business days of the due date thereof. . .

(Doc. 1, p. 6.)

4.      The Note also contained an acceleration clause rendering the full amount of the

principal and interest immediately due upon default:

> Upon the occurrence of an Event of Default (other than an Event of Default described in clause (ii) or (iii) of the definition thereof), any and all of the obligations hereunder, at the option of the Holder, and without demand or notice of any kind, may be immediately declared, and thereupon shall immediately become in default and due and payable and the Holder may exercise any and all rights and remedies available to it at law, in equity or otherwise...

(Doc. 1, pp. 6-7.)

5.      Interest payments were due four times per year:

> Accrued interest hereon shall be due and payable on the last business day of March, June, September and December at each year, commencing on June 30, 1998, and on any other date on which the principal balance is due (whether by acceleration, maturity or otherwise).

(Doc. 1, p. 6.)

6.      Satellink failed to make the required interest payment in September 2000.

7.      It is undisputed that by operation of the terms of the Note, Satellink was in

default commencing on October 6, 2000, five days after its failure to pay.

8.      It is undisputed that because of this default, and in accordance with the Note,

Satellink now owes interest at nine percent of the principal amount of the loan for the

period starting July 1, 2000 and ending October 5, 2000; and ten percent of the

principal amount from October 6, 2000 until paid.

9.      The Note also provided for the suspension of payment if Satellink fell into default

on a "Senior Debt":

> Notwithstanding anything herein to the contrary or otherwise, Maker
> covenants and agrees, and the Holder by its acceptance hereof likewise
> covenants and agrees, that any and all payments under or in respect of
> this Note, including, without limitation, all principal of and interest on
> this Note, shall be subordinated in right of payment to the prior payment
> in full of all Senior Debt (as hereafter defined); *provided, however*, that so
> long as the Holder has not received a notice from the holder of any Senior
> Debt that (a) a "default" or an "event of default" has occurred under any
> document or instrument evidencing such Senior Debt; or (b) a "default" or
> an "event of default" would occur under any document or instrument
> evidencing such Senior Debt as a result of any payment by Maker to the
> Holder hereunder, Maker may pay, and the Holder may receive, any
> scheduled payments of principal of and interest on this Note.

(Doc. 1, p. 7) (emphasis in original).

10.     The Note defined "Senior Debt" as follows:

> For purposes hereof, "<u>Senior Debt</u>" shall mean (i) all indebtedness for
> borrowed money at any time and from time to time owing by the Maker
> to any person or entity, whether direct or indirect, absolute or contingent,
> secured, now existing or hereafter arising, together with all substitutions,
> replacements, renewals, extensions, refinancings or refundings thereof
> and (ii) shall include all interest accruing on Senior Debt after the filing
> of a petition initiating any proceeding pursuant to any bankruptcy law
> whether or not the claim for such interest is allowed as a claim after such
> filing in any proceeding under such bankruptcy law.

(Doc. 1, p. 7) (emphasis in original).

11.     The Note also set out the order of debt payments in the event that Satellink's

Senior Debt holders seized the assets of Satellink:

> Without limiting the generality of the foregoing, in the event of any

distribution, division or application, partial or complete, voluntary or involuntary, by operation of law or otherwise, of all or any portion of the assets of the Maker or the proceeds thereof to the creditors of the Maker or with respect to any indebtedness of the Maker, pursuant to the liquidation, dissolution or other winding up of the Maker or its assets or pursuant to any receivership, insolvency or bankruptcy proceeding, or assignment for the benefit of creditors, or any proceeding by or against the Maker for any relief under any bankruptcy or insolvency law or laws relating to the relief of debtors, readjustment of indebtedness, reorganization, compositions or extensions, or pursuant to any foreclosure proceeding or other voluntary or involuntary sale, transfer or other disposition of any assets of the Maker, then and in any such event, any payment or distribution of any kind or character, either in cash, securities or other property (including any adequate protection payment), which shall be payable or deliverable upon or with respect to any amounts owing under or in respect of this Note shall be paid or delivered directly to the holder(s) of Senior Debt for application to the Senior Debt (whether or not the same is then due) until all of the Senior Debt has been paid in full.

(Doc. 1, p. 7).

12. As noted above, it is undisputed that Satellink defaulted on the Note. It is also undisputed that Satellink defaulted on its Senior Debt. It is also undisputed that Satellink's Senior Debt holders seized all of Satellink's assets, and the company is no longer in operation.

## IV.   CONCLUSIONS OF LAW

1. The parties do no dispute that the Note is governed by Georgia law. Further, the parties do not dispute, nor is there is anything in the record to suggest, that application of Georgia law in this matter would contravene Louisiana public policy.

2. Under Georgia law, "[a] contract is an agreement between two or more parties for the doing or not doing of some specified thing." O.C.G.A. § 13-1-1.

3. Under Georgia law, there are four elements required for confection of a valid

contract: (1) there must be parties able to contract; (2) a consideration moving to the contract; (3) the assent of the parties to the terms of the contract; and (4) a subject matter upon which the contract can operate.  O.C.G.A. § 13-3-1.

4.      The parties do no dispute that the Note contains all four elements required for a valid Georgia contract.  First, there is no dispute that Fritz and Satellink each possessed the requisite capacity to contract.  Second, there is no dispute that there was good and valuable consideration to the contract.  O.C.G.A. § 13-3-41.  Third, there is no dispute that by signing the Note each party assented to the terms of the contract.  O.C.G.A. § 13-3-2.  Finally, there is no dispute that the subject matter of the Note is a debt for money, a matter as to which parties can contract under Georgia law.

5.      Accordingly, the Court concludes that the Note signed on April 1, 1998 created a contract under Georgia law.

6.      The construction of a Georgia law contract is a question for the Court.  O.C.G.A. § 13-2-1.  Georgia law prefers a construction that upholds the agreement in all of its parts, and provides that the whole contract should be considered when arriving at the construction of any part.  O.C.G.A. § 13-1-8; §13-2-2(4).  Under Georgia law, the intention of the parties is determined from a consideration of the entire contract; and, if possible, all of its provisions should be so interpreted as to harmonize with each other. *Simpson v. Brown*, 134 S.E. 161 (Ga. 1926).

7.      Here, Satellink argues that the Note is a conditional obligation, and not a negotiable instrument.  Thus, it is not obligated to pay the principal balance and interest until it pays its Senior Debt holders, in full.

8.     Under Georgia law, a negotiable instrument is "an unconditional promise or order to pay a fixed amount of money, with or without interest or other charges described in the promise or order." O.C.G.A. § 11-3-104(a).

9.     For the purposes of subsection (a) of Georgia Code §11-3-104, "a promise or order is unconditional unless it states: (a) an express condition to payment; (b) that the promise or order is subject to or governed by another writing; or (c) that rights or obligations with respect to the promise or order are stated in another writing." O.C.G.A. § 11-3-106(a).

10.    The Court of Appeals for the Eleventh Circuit has held that "[t]o be negotiable, a note must be a courier without luggage; it must move unencumbered." *Ameritrust Company, N.A. v. C.K. White*, 73 F.3d 1553 at 1559 (11th Cir. 1996).

11.    Under Georgia law, "[c]onditions may be precedent or subsequent. A condition precedent must be performed before the contract becomes absolute and obligatory upon the other party. The breach of a condition subsequent may destroy the party's rights under the contract or may give a right to damages to the other party, according to a true construction of the intention of the parties." *Fulton County v. Collum Properties*, 193 Ga. App. 774, 775 (Ga. Ct. App. 1989) (citing O.C.G.A. § 13-3-4). "The law favors conditions to be subsequent rather than precedent and to be remediable by damages rather than by forfeiture." *Id.* (citing O.C.G.A. § 44-6-41). Further, "[w]here the rules of construction will allow, equity seeks always to construe conditions subsequent into covenants and to relieve against forfeitures." *Id.* (citing O.C.G.A. § 23-1-23).

12.    While conditions precedent are not favored in interpreting contracts,

7

words such as "on condition that," "if," and "provided," are words of condition, and in the absence of indication to the contrary, the employment of such words in a contract creates conditions precedent. Also, express statements to the effect that a condition is to be construed as a condition precedent are often contained in contracts and are entitled to be so construed in carrying out the intent of the parties.

*General Steel, Inc. v. Delta Bldg. Sys.*, 297 Ga. App. 136, 138-139 (Ga. Ct. App. 2009)

(citing *Collum Properties*, 193 Ga. App. at 775).

13.    The contract provision at issue here states the following:

Notwithstanding anything herein to the contrary or otherwise, Maker covenants and agrees, and the Holder by its acceptance hereof likewise covenants and agrees, that any and all payments under or in respect of this Note, including, without limitation, all principal of and interest on this Note, shall be subordinated in right of payment to the prior payment in full of all Senior Debt (as hereafter defined); *provided, however*, that so long as the Holder has not received a notice from the holder of any Senior Debt that (a) a "default" or an "event of default" has occurred under any document or instrument evidencing such Senior Debt; or (b) a "default" or an "event of default" would occur under any document or instrument evidencing such Senior Debt as a result of any payment by Maker to the Holder hereunder, Maker may pay, and the Holder may receive, any scheduled payments of principal of and interest on this Note.

(Doc. 1, p. 7) (emphasis in original).

14.    The Court concludes that this provision of the Note does not employ words of a condition precedent.

15.    As noted above, conditions precedent are conditions that must be performed *before* the contract becomes absolute and obligatory upon the other party. *Roush v. Dan Vanden Chevrolet, Inc.*, 155 Ga. App. 372, 373 (Ga. Ct. App. 1980).

16.    Here, it is undisputed that Satellink's obligation to pay the principal and interest on the Note were created the instant the Note was executed.  Indeed, it is undisputed

that Satellink made interest payments on the Note from June 1998 until June 2000.

17.     Further, nothing in the above cited provision suggests that Satellink's obligations under the Note were not formed until it paid, in full, some Senior Debt.

18.     By definition, conditions precedent require "performance by one party before performance by the other." *Wolverine Ins. Co. v. Sorrough*, 122 Ga. App. 556, 560 (Ga. Ct. App. 1970). A purported condition that Satellink pay its Senior Debt, in full, before *it* became obligated under the contract does not fall within this definition.

19.     In sum, the Court concludes as a matter of law that the Note does not contain a condition precedent. Where, as here, "the contract's terms are clear and unambiguous and do not clearly establish a condition precedent, [a court] cannot construe the contract to create one." *General Steel, Inc.*, 297 Ga. App. at 138-139 (citations omitted).

20.     If read as suggested by Satellink, the above cited provision would allow Satellink to take ownership of the assets, accounts receivable, contracts, goodwill and value of Fritz's business without paying any money to Fritz. Further, if read as suggested by Satellink, the cited provision would also allow Satellink to sell off those acquired assets to satisfy its own debts without paying any money to Fritz in return. Such a reading does not harmonize with the other provisions of the Note and the obvious intentions of the parties. *Simpson*, 134 S.E. at 162-63.

21.     Although the Note may establish the relative ranking of creditors in the event of Satellink's default on its obligations, it does not relieve Satellink of its obligation to pay the principal and interest under the Note. Indeed, Fritz concedes that he stands behind Satellink's Senior Debt holders in the line to collect money from Satellink.

However, under the terms of the Note, the debt is owed to Fritz.

22.    According to the above cited provision, Satellink was obligated to pay the principal and interest on the Note unless and until Fritz was put on notice that Satellink had defaulted on a Senior Debt.  In other words, Fritz retained the right to accept principal and interest payments under the Note until he received notice from a Senior Debt holder that Satellink was in default on its obligations, or that payments to Fritz would cause Satellink to default on its obligations.

23.    A review of the record reveals that Satellink defaulted on the Note before Fritz received notice from Satellink's Senior Debt holders.  Indeed, Satellink has failed to point to, nor has the Court identified, any evidence in the record that it or its Senior Debt holders notified Fritz that Satellink was in default on its obligations prior to Satellink defaulting on the Note

24.    Accordingly, the Court concludes that Fritz is entitled to a judgment in the full amount of the unpaid principal and interest regardless of his ranking relative to Satellink's other creditors.

25.    The Court also concludes that the Note expressly permits Fritz to collect attorneys' fees and costs from Satellink in the event of litigation:

> Maker shall pay all reasonable out-of-pocket expenses of the Holder in the collection of this Note, including reasonable attorneys' fees actually incurred, if any litigation is commenced by either party with respect to this Note or if this Note is collected by or through an attorney-at-law.

(Doc. 1, p. 8.)

26.    Accordingly, Fritz shall be awarded reasonable attorneys' fees and costs is association with this litigation.

## V.   JUDGMENT

Accordingly,

**IT IS ORDERED** that this matter is **DISMISSED**, with prejudice.

**IT IS ORDERED** that **JUDGEMENT** is rendered in favor of Plaintiff Philip Fritz and against Defendant Satellink Paging, LLC.

**IT IS FURTHER ORDERED** that Plaintiff Philip Fritz is awarded $790,943.75, immediately due and owing, together with past-due interest in the amount of $17,796.23 (representing nine percent of the principal amount for the period from July 1, 2000 to October 5, 2000), and ten percent interest on the of the unpaid principal balance from October 6, 2000 until paid.

**IT IS FURTHER ORDERED** that Plaintiff Philip Fritz is awarded reasonable attorney's fees and costs. Fritz shall file his motion for attorneys' fees and costs **no later than April 30, 2014**. Fritz's motion shall comply with the Federal Rules of Civil Procedure and the Local Rules for the United States District Court for the Middle District of Louisiana.

Baton Rouge, Louisiana, this 31st day of March, 2014.

**BRIAN A. JACKSON, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

11